77 F.3d 488
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The AEROSPACE CORPORATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 94-70447, 94-70548.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 9, 1996.*
Decided Feb. 21, 1996.
 
 Before: POOLE, WIGGINS and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The Aerospace Corporation, a California corporation, petitions for review of an order of the National Labor Relations Board. The challenged order requires Aerospace to provide certain personnel information to the Aerospace Professional Staff Association (Union), the collective bargaining representative for Aerospace's technical employees. The NLRB cross-petitions for enforcement of its order. We have jurisdiction pursuant to 29 U.S.C. §§ 160(e), (f), and we enforce the order.
 
 
 3
 To assist its processing of a union member's grievance against Aerospace, the Union requested employee rankings, matrix[1], salary, and raise information for every employee in the aggrieved employee's unit. (ER at 100). The Union suggested that social security numbers or other code could be used to protect the identity of the other workers. (Id.).
 
 
 4
 Aerospace refused to provide the requested information, arguing that it was protected from disclosure under the exception established in Detroit Edison Co. v. NLRB, 440 U.S. 301 (1979). In Detroit Edison, the Supreme Court recognized that in some situations an employer's confidentiality concerns may justify limited disclosure of certain relevant information. Detroit Edison, 440 U.S. at 317-318 (1979) (company properly refused to disclose employees' scores on aptitude tests without their consent.)
 
 
 5
 The company did offer to provide the information for 6, then 7, then 25 of the 50 employees in the unit. (ER at 101, 102, 103). The Union continued to request information on all 50 employees, explaining that they needed to evaluate the consistency of the employee reviews and rankings. (ER at 104).
 
 
 6
 The Union then filed an unfair labor practice charge against Aerospace, seeking to compel the company to release the requested information. The NLRB subsequently issued a complaint against Aerospace charging a violation of sections 8(a)(1) and (5) of the National Labor Relations Act. 29 U.S.C. § 158. (ER at 62). Under these sections, the failure of either an employer or union to give the other information necessary to enable the requesting party to intelligently evaluate grievances filed may constitute an unfair labor practice. NLRB v. Acme Industrial Co., 385 U.S. 432, 435-36 1967), NLRB v. Safeway Stores, Inc., 622 F.2d 425, 429 (9th Cir.1980), cert. denied, 450 U.S. 913 (1981). The requesting party is generally entitled to receive any information relevant to the grievance proceedings. See id.
 
 
 7
 The administrative law judge (ALJ) held that Aerospace committed an unfair labor practice when it refused to give the Union the matrix and rankings information[2]. (ER at 109). The ALJ found that the information was relevant and necessary for the union's grievance[3]. (ER at 105). He further found that Aerospace did not prove that its confidentiality concern was "legitimate and substantial," and thus it did not meet Detroit Edison 's threshold requirement for balancing competing interests. (ER at 106). The ALJ ordered Aerospace to provide the information using social security numbers or some other code. (ER at 110). The NLRB affirmed the ALJ's findings and conclusions. (ER at 117).
 
 
 8
 * Aerospace contends that our review should not defer to the NLRB's decision because the facts are undisputed and thus the ALJ's ruling that Aerospace did not meet the Detroit Edison threshold is purely a question of law. This contention was rejected in Salt River Valley Users' Assn. v. NLRB, 769 F.2d 639, 642 (9th Cir.1985) (review of an NLRB decision based on undisputed facts which found, as in the present case, that the Detroit Edison exception did not apply). The court adopted a deferential standard of review observing, "The Supreme Court has noted that 'balancing ... conflicting legitimate interests ... to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review.' " Id., quoting Beth Israel Hospital v. NLRB, 437 U.S. 483 (1978). Therefore, we apply a deferential standard and we will not upset the NLRB's decision if its findings are supported by substantial evidence. See NLRB v. O'Neill, 965 F.2d 1522, 1526 (9th Cir.1992), cert. denied, 113 S.Ct. 2995 (1993).
 
 II
 
 9
 Aerospace contends that the information requested by the Union is protected by Detroit Edison. We disagree. The ALJ, relying on this court's analysis in Salt River, properly distinguished this case from Detroit Edison. He noted that the information in the matrices relates to employment performance unlike the test results in Detroit Edison "which theoretically reveal intellectual capacity and psychological makeup." Salt River at 642. (ER at 106). Furthermore, the ALJ found that unlike the test results in Detroit Edison, there was "no record evidence that [Aerospace's] employees have any expectation that their ladder rankings or matrices will remain confidential in the instant circumstances." (ER at 106). Indeed, similar information has been released to the Union in prior grievances. (ER at 103). Thus, Aerospace's concerns of confidentiality were not so substantial as to justify its refusal to provide the Union with the requested information.
 
 III
 
 10
 Aerospace also contends that the ALJ, and the NLRB through its adoption of the ALJ's decision, erred by finding their concerns for confidentiality did not even meet the threshold for balancing. Relying on Salt River and Emeryville Research Center v. NLRB, 441 F.2d 880 (9th Cir.1971), Aerospace contends that as a matter of law, their concerns were sufficient to require the ALJ to at least balance them against the Union's need for the information. Aerospace misreads these cases. In Salt River, while acknowledging that the company had some privacy interests, the court held that Detroit Edison did not apply and ordered the company to produce all relevant information to the union. Salt River, 769 F.2d at 642-643. In Emeryville, the company did not object to supplying merit ratings based on confidentiality concerns. Rather, they objected because the union request included the merit rankings of supervisors who were not represented by the union. Emeryville, 441 F.2d at 882. The court never ruled on the merits of the company's objections to producing the requested information. It simply held that when a company makes a specific objection to the form of the information requested and also makes a good faith offer to provide it in a mutually satisfying form, the union has a duty to specify its needs in an attempt to find an accommodation. Id. at 885. Such is not the case here. Therefore, the NLRB properly found that no balancing was required.
 
 IV
 
 11
 Aerospace finally contends that the Union's resort to the NLRB was premature because it had not engaged in good faith bargaining to find an accommodation of Aerospace's concerns. We disagree. The Union was entitled to the information, and thus was not required to bargain for it. The cases cited by Aerospace to support its contention are inapposite. They all require good faith bargaining to find an acceptable accommodation once the company was found to have a legitimate concern that required balancing. See, e.g., NLRB v. St. Joseph's Hospital, 755 F.2d 260 (2d Cir.), cert. denied, 474 U.S. 827 (1985), Minnesota Mining and Manufacturing Co., 261 NLRB 27 (1982). Aerospace never reached that level. As noted above, Aerospace's reliance on Emeryville is also misplaced. See Emeryville, 441 F.2d at 885. Thus, the Union did not prematurely turn to the NLRB for access to information to which it is entitled.
 
 
 12
 For these reasons, we deny the petition.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The matrix consists of 16 employment attributes, including quantity and quality of work, timeliness, versatility, communicative skills, and responsibility. Supervisors evaluate employees on a scale of 1 to 5 in each category. (ER at 100)
 
 
 [2]
 The ALJ found that Aerospace had already provided the salary and raise information in other documents and that it had no obligation to provide the information in the exact form requested by the Union. (ER at 108-109). Thus, only the matrices and rankings are at issue in this appeal
 
 
 [3]
 Aerospace does not dispute the relevancy or necessity of the requested information. (ER at 105)